[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12749
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-23550-EGT

MICHAEL DUBLE,

Plaintiff-Appellant,

versus

FEDEX GROUND PACKAGE SYSTEM, INC.,

Defendant-Appellee,

FEDERAL EXPRESS CORPORATION,

Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(July 24, 2014)

Before PRYOR, MARTIN, and FAY, Circuit Judges.

PER CURIAM:

Michael Duble appeals the magistrate judge's order granting summary judgment to FedEx Ground System Inc. ("FedEx"), in an action alleging disability discrimination and retaliation. We affirm.

## I. BACKGROUND

Duble worked as a Service Manager for FedEx at one of its facilities in Miami, Florida, from September 1997 to November 2009. His specific responsibilities included pickup and delivery ("P&D"), preload, and outbound duties, which would change depending on FedEx's business needs. In September 2006, Duble was diagnosed with multiple sclerosis ("MS").

In March 2007, Duble began working as a P&D service manager. Thereafter, the District Managing Director, George Crosby, issued a mandate for a service manager to be outside each station's entrance gate to speak to returning contractor drivers about any packages not delivered to ensure they were held accountable. This procedure is known as the "gatekeeper" function. R. at 1341, 3323-24, 3770. Duble was assigned the gatekeeper function in February 2008 and performed his duties until April 2008.

On April 11, 2008, Duble told his supervisor he was completely exhausted and could not perform the gatekeeper function. Duble then went to Senior Manager Bryon Martinez to explain he could not go outside that day because heat

2

affects his MS.  Human Resources ("HR") then became involved.  Senior HR Representative Esperanza Cruz met with Duble and completed a Reasonable Accommodation Form ("HREA form").  Duble reported he "is not allowed to get overheated [and] [c]an't be under the sun or heat."   R. at 1344, 3770.  Duble's suggested accommodation was for someone else to perform the gatekeeper function between 4:30 p.m. and 8:00 p.m.  At Cruz's request, Duble provided FedEx with a letter from his treating physician stating "he has a neurologic condition that is subject to fluctuation and can be worsened by exposure to heat in his environment," and he "need[s] to work in an environment that is inside and away from heat for his own protection."  R. at 1381.  Following the April 11, 2008, incident, Duble was never asked, nor did he perform, the gatekeeper function again.

In November 2008, Duble's supervisor asked him to conduct Customer Service Rides ("CSRs").  Duble advised his supervisor, because of his MS, he could not conduct CSRs in vans because they did not have air-conditioning and involved too many stops.  At the Miami facility there were approximately 100 non-air-conditioned vans and only six bulk trucks with air-conditioning.  FedEx subsequently did not request Duble to perform CSRs in vans.

In December 2008, Crosby went to the Miami facility and noticed one of the van lines was being operated without a manager.  Martinez told him FedEx had

3

pulled some of the managers to assist in opening an annex building, so Crosby decided to reassess the station.  When they did so, Martinez told Crosby they could not move Duble to the preload dock because he had heat restrictions.  Crosby decided they would have to assess the entire station and have HR review if the accommodation for Duble was still needed.  FedEx thereafter reevaluated its ability to keep Duble in a managerial role under the constraints identified by his physician.

Duble was identified as a possible manager to move to preload, because there was not enough managerial work to keep Duble in the limited P&D service manager role.  This would have required Duble to work the "graveyard shift," which he did not want to do.  R. at 28, 30, 513.  Duble worked different hours than other P&D service managers, and he was unable to perform CSRs in vehicles not equipped with air-conditioning.  In January 2009, the Regional HR Manager Michele Miles instructed Kim Luke, an Employee Relations Specialist, to complete a second HREA form, regarding Duble's continued limitations.  Duble stated he could perform the gatekeeper function if the returning delivery trucks pulled up to bay door 32, an alternative FedEx permitted during inclement weather, because this would allow him to stay indoors and not to become overheated.  According to the second HREA form, however, this suggested accommodation posed an undue hardship FedEx.

4

Miles was instructed to offer Duble two options: (1) take short-term disability leave for approximately three months, or (2) be reclassified to a clerk position. On January 20, 2009, Miles, Luke, and Martinez met with Duble. Martinez gave Duble the job descriptions for the P&D and Dock Service Manager positions and told him to take these to his physician to provide a letter affirming Duble could perform the listed duties. Duble's physician sent a letter explaining Duble could perform either job without difficulty from his neurologic condition. Martinez reassigned Duble to preload.

On March 6, 2009, Duble filed a complaint of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"). He alleged disability discrimination and retaliation, because FedEx had failed to accommodate. During the EEOC's investigation, FedEx's in-house counsel requested retrieval of Duble's emails. As a result of finding what was considered inappropriate content and language in numerous emails, Duble was terminated on November 19, 2009, for violation of FedEx's email policy.

The EEOC investigation concluded there was no probable cause to believe unlawful discrimination or retaliation had occurred. Duble then filed suit alleging disability discrimination by FedEx under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and Florida Civil Rights Act ("FCRA"), Fla. Stat.

§ 710.10.  He alleged FedEx had taken adverse actions against him because of his disability by failing to provide him with reasonable accommodations for his MS in his capacity as P&D Service Manager.  Further, he alleged FedEx had discriminated against him, based on disability and had retaliated against him for engaging in protected activities by (1) imposing adverse changes in the conditions of his employment, when it transferred him to a different position, and (2) by terminating him.

The magistrate judge[1] granted FedEx's motion for summary judgment.  The magistrate judge concluded Duble failed to exhaust his administrative remedies regarding his termination claims, Duble had not established a prima facie case of failure to accommodate, and Duble's transfer was not discriminatory or retaliatory.  On appeal, Duble argues the magistrate judge erred by granting summary judgment to FedEx on (1) his retaliatory termination claim,[2] because he was not barred for failure to exhaust his administrative remedies; (2) his discrimination claim for failure to accommodate, because FedEx failed to accommodate his disability by requiring him to choose between two options that were unacceptable accommodations; and (3) his discriminatory and retaliatory transfer claims, because he suffered an adverse action because of his disability and his protected

---

[1] The parties consented to jurisdiction before the magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

[2] Because Duble does not challenge on appeal the magistrate judge's entry of summary judgment in favor of FedEx on his discriminatory termination claim, Duble has abandoned that argument. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

expression, and FedEx's proffered legitimate, non-discriminatory reason for its action was pretext.

## II. DISCUSSION

A. <u>Retaliatory-Termination Claim</u>

We review de novo whether the requirement of exhaustion of administrative remedies applies to a claim. *Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1221 (11th Cir. 2008). Exhaustion of administrative remedies is a matter in abatement that should be raised in a motion to dismiss, or treated as such if raised in a motion for summary judgment. *Bryant v. Rich*, 530 F.3d 1368, 1374-75 (11th Cir. 2008).

Prior to filing an action in federal court for discrimination or retaliation, a plaintiff must file an administrative charge with the EEOC. *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (discussing the exhaustion requirement in Title VII actions). The purpose of the exhaustion requirement is to allow the EEOC the first opportunity to investigate the alleged practices and to perform its role "in obtaining voluntary compliance and promoting conciliation efforts." *Id.* (citation and internal quotation marks omitted). We have cautioned "that allegations of new acts of discrimination are inappropriate" for a post-charge judicial complaint. *Id.* at 1279-80. Consequently, "a plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be

7

expected to grow out of the charge of discrimination." *Id.* at 1280 (citation and internal quotation marks omitted).

It is unnecessary for a plaintiff to exhaust administrative remedies prior to filing a judicial claim of retaliation if that claim grew "out of an earlier charge," because the "the district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court." *Baker v. Buckeye Cellulose Corp.*, 856 F.2d 167, 169 (11th Cir. 1988) (quoting *Gupta v. E. Tex. State Univ.*, 654 F.2d 411, 414 (5th Cir. Unit A Aug. 1981)). This exception, however, does not apply, when no other properly raised judicial claim exists to which the retaliation claim may attach.

In *Gupta*, the plaintiff filed two EEOC charges and then commenced his lawsuit arising out of those charges. 654 F.2d at 413. While the case was pending, the plaintiff was notified his employment contract would not be renewed for the following year. *Id.* He argued the termination was a retaliatory action against him, but he never filed a charge with the EEOC alleging the retaliation. Under those circumstances, we concluded it was unnecessary for the plaintiff to file a charge with the EEOC before amending his complaint to include retaliation, because the claim grew out of the administrative charge that properly was before the district judge. *Id.* at 414.

8

We applied the *Gupta* rule in *Baker*, where the plaintiff had filed a lawsuit in district court pursuant to a right-to-sue letter. 856 F.2d at 168. While the complaint was pending, she filed a motion for preliminary injunction and sought to enjoin allegedly retaliatory actions taken by her employer as a result of the suit. *Id.* She did not file a separate charge with the EEOC regarding these actions, and her employer argued the district judge had no jurisdiction to entertain the motion, because she had not exhausted her administrative remedies for those actions. *Id.* We held she did not have to exhaust her administrative remedies for the district judge to have jurisdiction over the motion. *Id.* at 169.

In *Gupta*, we determined the plaintiff could proceed on retaliation claims growing out of EEOC charges that already were before the district judge. *See Gupta, 654* F.2d at 414 ("[T]he district court has ancillary jurisdiction to hear such a claim when it grows out of an administrative charge that is properly before the court."). In *Baker*, we did not state whether the administrative charge already had to be before the district judge, but noted the "complaint had been pending for four months in the district court," when the plaintiff filed a motion for preliminary injunction. *Baker*, 856 F.2d at 168-69.

Duble's termination claims relate to a discrete act of alleged discrimination that occurred after he filed his initial charge pertaining to FedEx's purported failure to accommodate. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

9

114, 122 S. Ct. 2061, 2073 (2002) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'").  Moreover, Duble was terminated in November 2009 and did not file suit in district court until September 2011.  Because this case is factually distinguishable from *Gupta* and *Baker*, we conclude the *Gupta* rule does not apply.  Duble's EEOC claim was still pending, when he was terminated, ostensibly for violating FedEx's email policy, and he had the opportunity to amend his EEOC charge or file a new charge relating to his termination.  Duble, however, chose not to amend or file a new charge.  Therefore, Duble failed to exhaust his administrative remedies regarding his termination claims.

B. Failure-to-Accommodate Claim

We review de novo "a grant of summary judgment on ADA claims, construing the facts in the light most favorable to the non-moving party." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007).  A movant is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We also may affirm a judgment on any legal grounds, regardless of the district judge's grounds and reasoning.  *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004).

10

We apply the burden-shifting analysis of Title VII employment-discrimination claims to ADA claims. *Holly*, 492 F.3d at 1255. To establish a prima face case of employment discrimination based on a disability, the plaintiff must show "(1) he is disabled; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability." *Id.* at 1255-56.

Under the second prong,[3] to establish a plaintiff was otherwise qualified, he must prove he is a person with a disability who, "with or without reasonable accommodation, can perform the essential functions" of the job. 42 U.S.C. § 12111(8). He must prove he is able to perform the essential functions of his job without accommodation, or he is able to perform those functions with a reasonable accommodation. *Holly*, 492 F.3d at 1256. "An accommodation is 'reasonable' and necessary under the ADA, in turn, only if it enables the employee to perform the essential functions of the job." *Id.* We have noted "prior accommodations do not make an accommodation reasonable." *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003). "[A]n employer who goes beyond the demands of the law to help a disabled employee incurs no legal obligation to continue doing so." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1257 n.3 (11th Cir. 2001).

To establish the third prong, the plaintiff must show the employer discriminated against him on the basis of his disability. *Holly*, 492 F.3d at 1261-

---

[3] The facts are undisputed that Duble was disabled within the context of the ADA.

11

62. "An employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Id.* at 1262. After Duble asserted he could not perform the gatekeeper function because of the hot weather in Miami, FedEx did not require him to perform that function. FedEx also did not require him to perform the CSRs in its vans, because the vans did not have air-conditioning. Accordingly, the record does not show FedEx failed to accommodate Duble for the two functions his MS prevented him from performing.

Regardless of whether these functions were essential or marginal, or whether Duble perceived the lack of requests to perform these functions as accommodations, the record shows FedEx did not require him to perform any job beyond his medical limitations. After the January 2009 meeting in which Miles offered Duble the two options of taking short-term disability leave or accepting a demotion, Miles allowed Duble to acquire another letter from his physician that lifted his restrictions. FedEx did not require him to perform the gatekeeper function or CSRs while awaiting that letter, and FedEx did not transfer him to preload until after it received the requested letter from his physician. If these two functions were marginal, then FedEx adequately accommodated Duble by not requiring him to complete them. If they were essential, FedEx was not required to accommodate Duble. *See Wood*, 323 F.3d at 1314 (explaining a previously

provided accommodation does not necessarily make that accommodation reasonable).  Therefore, Duble failed to provide evidence that FedEx unlawfully discriminated against him by failing to accommodate his disability.  *See Lucas*, 257 F.3d at 1260 (recognizing the ADA may require an employer to restructure a job "by altering or eliminating some of its marginal functions," but employers are not required to eliminate essential functions of a position).

C. Discriminatory and Retaliatory-Transfer Claims

The ADA prohibits employers from discriminating against qualified individuals on the basis of disability, regarding the discharge of employees or other terms, conditions, and privileges of employment.  42 U.S.C. § 12112(a).  A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  § 12111(8).  The retaliation section of the ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  § 12203(a).  Under the FCRA, it is unlawful for an employer to discriminate against any person, because that person has opposed any practice which is an unlawful employment practice under the FCRA, or because that person has made a charge or participated

13

in any manner in an investigation, proceeding, or hearing under the FCRA.  Fla. Stat. § 760.10(7).

We evaluate ADA and FCRA retaliation cases under the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S. Ct. 1817, 1824 (1973).  *Holly*, 492 F.3d at 1255; *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1333 (11th Cir. 1999).  First, the plaintiff must establish a prima facie case, which raises a presumption that the employer's decision was more likely than not based on an impermissible factor.  *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th Cir. 1995).  To establish a prima facie case for retaliation under the ADA, the plaintiff must show "(1) he engaged in a statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the adverse action and his protected expression."  *Lucas*, 257 F.3d at 1260.

"An employment action is considered 'adverse' only if it results in some tangible, negative effect on the plaintiff's employment."  *Id.* at 1261.  We have held the question of whether an action is adverse is objective, such that "[a]n ADA plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse."  *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998).  An action is not adverse simply because the plaintiff dislikes it or disagrees with it.  *Id.*  The plaintiff's subjective preference of

one position over another is generally not relevant to determine whether an action was adverse. *Id.* at 1452.

The record does not show Duble suffered an adverse action, satisfying the requirements for a prima facie case of discrimination or retaliation under the ADA or FCRA. In January 2009, FedEx undertook a needs analysis of the Miami facility and reviewed all of the managers and their assignments. FedEx determined Duble was an ideal candidate to move from his P&D Service Manager position, where he was not performing the gatekeeper function or CSRs, to a Preload Service Manager position. Duble's transfer was considered a lateral move and did not involve a loss in salary or benefits. Although Duble provided evidence the decision greatly inconvenienced his personal life, an action is not adverse solely because the plaintiff disliked or disagreed with it. *See Doe*, 145 F.3d at 1449.

**AFFIRMED.**