Roland V. JOHNSON, Plaintiff,

v.

FULTON CONCRETE COMPANY, Defendant.

No. CIV.A.1:02–CV1651MHS.

United States District Court, N.D. Georgia, Atlanta Division.

April 9, 2004.

Roland V. Johnson, Lawrenceville, GA, Plaintiff Pro Se.

Christine E. Howard, D. Albert Brannen, Fisher & Phillips, Atlanta, GA, for Defendant.

## ORDER

SHOOB, Senior District Judge.

This matter is before the Court on defendant's motion for summary judgment and the Magistrate Judge's Report and Recommendation (R & R) recommending that the Court grant the motion as to plaintiff's federal law claims and dismiss plaintiff's state law claims. Although plaintiff filed a document labeled "objections," plaintiff does not explain how the R & R is incorrect. Rather, plaintiff criticizes the Magistrate Judge's previous orders granting plaintiff's attorneys' motions to withdraw and explains how an injury to his large toe prevented him from testifying truthfully during his deposition. Plaintiff urges the Court to deny defendant's motion for summary judgment because dismissal will deny plaintiff "justice and his day in court."

After a *de novo* review of the record, the Court concludes that plaintiff's objections are without merit, concludes that the R & R is correct, ADOPTS the R & R [# 101–1], GRANTS defendant's motion for summary judgment as to plaintiff's federal claims [# 77–1], DISMISSES without prejudice plaintiff's state law claims, and DISMISSES this action [# 1–1].

## FINAL REPORT AND RECOMMENDATION

KING, United States Magistrate Judge.

Plaintiff Roland V. Johnson filed this employment discrimination action against Defendant Fulton Concrete Company, Inc., on June 14, 2002. [Doc. 1]. Plaintiff Johnson alleges that Defendant subjected him to race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. [Doc. 23].[1] Plaintiff also asserts a state law claim of negligent retention. [*Id.*]. Pursuant to Rule 56(b) of the Federal Rules of Civil Procedure, Defendant Fulton Concrete has moved for summary judgment [Doc. 77] on all of Plaintiff's claims based upon the pleadings, statements of material facts, exhibits, and discovery materials submitted by the parties.

## I. Facts

When evaluating the merits of a motion for summary judgment, the court must view the evidence and factual inferences in a light most favorable to the non-moving party. *See Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 (11th Cir.1987). However, unsupported self-serving statements by the party opposing summary judgment are insufficient to avoid summary judgment. *See Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705, 714 (11th Cir.1984). Therefore, the evidence presented by the parties having been evaluated in accordance with the foregoing principles, the following facts are deemed to be true for the limited purpose of evaluating Defendant's summary judgment motion.

Plaintiff Roland Johnson is a black male who began working for Defendant Fulton Concrete Company on May 14, 2001, as a concrete truck driver. [Plaintiff's Deposition ("Pla.Dep.") at 181]. Plaintiff Johnson claims that when he was hired, he was told that when a tractor-trailer driver position came open, he would be considered for it. [Pla. Affidavit ("Aff.") ¶ 2; Pla. Dep. at 248].

Plaintiff contends that approximately four (4) months later, in September of 2001, he learned that the company was acquiring two (2) new tractor-trailers. [Pla. Dep. at 248; Doc. 23, ¶ 5]. Plaintiff then asked Barry Joseph, the Plant Manager, if he could start driving one of the tractor-trailers. [Pla. Dep. at 248]. Joseph responded that he had already assigned two (2) driver employees, Charlie Turner and James Williamson, to drive the tractor-trailers. [*Id.;* Spruill Dep. at 40–41]. At this time, both Turner and Williamson, who are white, had worked for Fulton Concrete for approximately four (4) years. [Joseph Aff. ¶¶ 7, 8]. Plaintiff also testified, "I asked Barry [Joseph] about it, and he told me that I looked good in my concrete truck, and I need to stay right where I'm at. And I said okay, you know." [Pla. Dep. at 249]. Plaintiff Johnson stated in his affidavit, "I was told by Barry Joseph and James Williamson that the tractor-trailer position was a promotion and paid more per hour than driving a concrete mixer." [Johnson Aff. ¶ 5]. Defendant Fulton Concrete, however, claims that the assignment to tractor-trailer driving positions was not a promotion for any individual because an increase in pay did not occur as a result. [Elovich Aff. ¶ 3].

Plaintiff Johnson testified that shortly after learning that he had not been select-

---

1. Although Plaintiff filed numerous motions to amend his complaint, including five (5) within a three (3) week period [Docs. 7, 9, 10, 17, 18] during August of 2002, only the claims set forth in Plaintiff's "First Amended Complaint" [Doc. 23] remain for resolution pursuant to this court's order [Doc. 30] of October 18, 2002.

ed to drive one of the tractor-trailers, he called the Equal Employment Opportunity Commission ("EEOC"). [Pla. Dep. at 250]. Plaintiff stated, "I got on the phone, and I called the EEO and spoke directly with Ms. Kimbro. I asked her if she would ... mail me an EEO complaint because I wanted to file a charge of discrimination, she said she would." [*Id.*]. Plaintiff did not tell Joseph about this phone call, and Joseph claims that he was not aware that Plaintiff had contacted the EEOC at any time during Plaintiff's employment with Defendant Fulton Concrete. [Joseph Aff. ¶ 6].

According to Plaintiff, however, he made the phone call to the EEOC in front of his coworkers and Joseph while he was at work. [Pla. Dep. at 250]. Plaintiff stated in his affidavit:

> I called the EEOC in front of Barry Joseph, while he was standing approximately six feet from me, and other coworkers, and requested and [sic] EEOC complaint form to file for race discrimination against Fulton Concrete Company. After receiving the EEOC complaint form I took it to Fulton Concrete on several occasion [sic] many of my coworkers saw me with this form and looked at the form.

[Pla. Aff. ¶¶ 7, 8]. At his deposition, Plaintiff Johnson was asked and testified to the following:

> Q. When you were on the phone did you notice whether anybody was looking at you?
>
> A. I didn't pay it no mind. You know, I just called the EEO.
>
> Q. Do you know if other employees were having conversations while you were in there?
>
> A. I didn't pay no attention. You know, I was on the phone talking to her

and asking her if she would mail me the complaint.

[Pla. Dep. at 274].

Plaintiff Johnson received the charge form from the EEOC, but he elected not to file a charge of discrimination against Defendant regarding the tractor-trailer driving assignments. [Pla. Dep. at 250]. He testified, "[T]he paperwork came to my house, and I started to fill it out. But I said, you know, I said I don't want to cause trouble. I like Barry. He's a good person.... I don't want to cause any problem, but it ain't right what they're doing. And so I decided—I elected not to file the charge...." [*Id.*].

Plaintiff testified that on November 20, 2001, approximately two (2) months after he was denied a tractor-trailer driver position, he was asked by Plant Manager Barry Joseph to ride to Gainesville, Georgia, with Joseph's son-in-law, Lane Atkins. [Pla. Dep. at 250]. According to Plaintiff, while he and Atkins were riding in a truck on the way to Gainesville, Atkins asked, "Roland, what did you ever do about that EEO complaint you said you filed against Barry?" [*Id.*]. After Plaintiff Johnson asked Atkins what he was talking about, Atkins allegedly said, "You know, you remember you said you was [sic] going to file the EEO complaint against Barry because Barry let Dog [James Williamson] have that position when he had just got [sic] his driver's license." [Pla. Dep. at 250–51]. Plaintiff testified that he told Atkins that he had not filed the complaint, and Atkins allegedly responded, "Well, you should have because it wasn't right for them letting [sic] Dog [James Williamson] have that position when he just got his tractor-trailer license." [*Id.* at 251].

That same day, November 20, 2001, Plaintiff Johnson got into a heated argument with Bill Taylor, a mechanic, in front of five (5) witnesses in the Fulton Concrete

shop. [Joseph Dep. at 20–21; Pla. Dep. at 200–10]. Plaintiff testified that he jokingly asked Taylor to change his tires. [Pla. Dep. at 200]. Plaintiff also told Taylor in a joking manner that he, Taylor, was not a certified mechanic and did not know what he was doing. [Pla. Dep. at 203, 207]. Taylor responded by jumping out of his chair and running up to Plaintiff. [Pla. Dep. at 200]. Plaintiff stated that Taylor had his fist clenched and appeared to be prepared to fight. [Id.]. Plant Manager Joseph witnessed the argument and testified that he told Taylor and Plaintiff Johnson that if they did not get quiet, they would both lose their jobs. [Joseph Dep. at 20]. Joseph testified that a few more words were spoken, and then Plaintiff said, "Hold on one minute, I've got something for you." [Id.]. Plaintiff ran out of the front door of the shop and, after a short time, returned to the back of the shop, either knocking or kicking on the back door, which was locked. [Id.]. According to Joseph, when he went to the back door and opened it, Plaintiff was holding a bag and one of his hands was inside the bag. [Id. at 20–21]. Plaintiff Johnson acknowledged that he went to his truck and returned with his black bag strapped over his shoulder and that his hand was in a pocket in the bag. [Pla. Dep. at 210].

Jason Hermann, a tractor-trailer driver for Fulton Concrete, testified that he witnessed the argument between Plaintiff and Taylor and believed Plaintiff had a gun inside the bag he was carrying. [Hermann Dep. at 16–17]. Terry Green was another Fulton Concrete employee who was in the shop during the incident. [Green Aff.]. Green stated that when Plaintiff Johnson returned to the shop, "He came in with his hand in a black bag saying you want some of this and some of me. I felt my life was in danger. I left immediately." [Id.]. Alvin Salter also witnessed the event and described it as follows: "I saw Roland leave through the front shop door. Then

he came back and was banging on the back door. Barry opened the door and Roland came in with black gloves on. He had his hand in a bag saying you want some of this. I immediately left the shop." [Salter Aff.].

Joseph testified that after he saw Plaintiff with his hand in the black bag, he told Plaintiff to leave the company's property. [Joseph Dep. at 21]. Plaintiff contends that before his argument with Bill Taylor, Joseph had already told him that he could go home. [Pla. Dep. at 225]. Plaintiff Johnson left the shop, but sometime later, Taylor reported to Joseph that Plaintiff was threatening him again. [Taylor Aff. ¶ 4]. Taylor stated in his affidavit, "Roland left but came back in the front door later as I was working under a truck. He stuck his hand under the truck pointing his index finger at me, moving his thumb up and down like a hammer of a gun. I told Barry that something needed to be done, as he was threatening me. Barry sent him home." [Id.]. Plaintiff denies making "any gun shooting gestures or any threatening verbal and physical gestures towards William Taylor or any Fulton Concrete employees." [Plaintiff's Response to Defendant's Statement of Material Facts ¶ 9].

The next day, November 21, 2001, Plaintiff Johnson clocked in for work. [Pla. Dep. at 240]. Plaintiff testified that after he walked to his truck, Plant Manager Barry Joseph handed him a disciplinary notice. [Id.]. Joseph then told Plaintiff that he was being terminated from his employment with Fulton Concrete because he had threatened another employee. [Pla. Dep. at 240–41]. Joseph asked Plaintiff to sign the disciplinary notice which stated that Plaintiff had threatened a fellow employee. [Id.]. Plaintiff testified that he refused to sign the form and told Joseph that he could just mail him the notice.

Plaintiff Johnson then left the work premises and went home. [*Id.*].

On December 27, 2001, Plaintiff Johnson filed an EEOC charge of discrimination against Defendant Fulton Concrete. [Doc. 77, Ex. 12]. Plaintiff checked the box marked "race" and stated that he believed he had been subjected to racial discrimination when the company terminated his employment on November 21, 2001. [*Id.*]. Plaintiff wrote, "I was told by Barry Joseph, (White), Plant Manager, that I was being terminated because I had threaten [sic] his employees." [*Id.*]. Plaintiff Johnson filed his complaint in this court on June 14, 2002. [Doc. 1].

Additional facts will be set forth below as they become necessary for discussion of Plaintiff's claims.

## II. Summary Judgment Standard

Summary judgment is proper when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The movant carries the initial burden and must show the court that there is "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991). The nonmovant is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, depositions, admissions

and the like, designating " 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Resolving all doubts in favor of the nonmoving party, the court must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.*

## III. Discussion

Plaintiff Roland Johnson alleges that Defendant Fulton Concrete discriminated against him on the basis of his race and retaliated against him in violation of 42 U.S.C. § 1981[2] and Title VII[3] by subjecting him to disparate treatment. Specifically, Plaintiff claims that Defendant denied him a promotion, terminated his employment, and subjected him to a hostile work environment. [Docs. 23, 81]. Plaintiff has also asserted a state law claim of negligent retention. [*Id.*]. Plaintiff seeks to use § 1981 as a parallel basis for relief with his Title VII claims. [Doc. 23]. The elements required to establish a § 1981 claim mirror those required for a Title VII claim. As the Eleventh Circuit has noted, "Both of these statutes have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." *Standard v.*

---

**2.** Section 1981(a) reads, in pertinent part: "All persons ... shall have the same right in every State ... to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws ... as is enjoyed by white citizens...." 42 U.S.C. § 1981(a).

**3.** Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).

*A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1330 (11th Cir.1998). This court will do the same.

### A. Plaintiff's Failure to Promote Claim

Plaintiff Johnson's first claim is that he was denied a promotion on the basis of his race, black. [Doc. 23]. Plaintiff, who worked as a concrete truck driver, alleges that he expressed interest in driving a tractor-trailer shortly after he was hired. According to Plaintiff, Plant Manager Barry Joseph told him that when a tractor-trailer driver position came open, he would be considered for it. [Pla. Aff. ¶ 2; Pla. Dep. at 248]. Plaintiff Johnson stated in his affidavit, "I was told by Barry Joseph and James Williamson that the tractor-trailer position was a promotion and paid more per hour than driving a concrete mixer." [Johnson Aff. ¶ 5].[4] In September of 2001, Fulton Concrete acquired two (2) new tractor-trailers. [Pla. Dep. at 248; Doc. 23, ¶ 5]. Plaintiff asked Joseph if he could start driving one of them, but Joseph responded that he had already assigned two (2) driver employees, Charlie Turner and James Williamson, to drive the tractor-trailers. [Pla. Dep. at 248; Spruill Dep. at 40–41]. Plaintiff also testified, "I asked Barry [Joseph] about it, and he told me that I looked good in my concrete truck, and I need to stay right where I'm at." [Pla. Dep. at 249]. Plaintiff alleges that Defendant Fulton Concrete selected Turner and Williamson to drive the tractor-trailers because they are white. [Doc. 23].

In a disparate treatment action, the plaintiff carries the burden of demonstrating that the defendant has unlawfully discriminated against him. *See Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207. 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The familiar *McDonnell Douglas* framework governs the allocation of burdens and order of presentation and proof, and they are as follows: (1) plaintiff has the burden of proving a *prima facie* case of discrimination; (2) if the plaintiff succeeds in proving the *prima facie* case, the burden (of production) shifts to the defendant to articulate some legitimate, non-discriminatory reason for the action taken against the employee; and (3) should the defendant carry this burden, plaintiff must have an opportunity to prove that the legitimate reason offered by defendant was a pretext for discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973).

A plaintiff establishes a *prima facie* case of failure to promote by showing: (1) that he belongs to a protected group; (2) that he sought and was qualified for the promotion; (3) that despite his qualifications he was rejected; and (4) that after his rejection the employer promoted a person outside of the plaintiff's protected group. *See Walker v. Mortham,* 158 F.3d 1177 (11th Cir.1998); *Crawford v. Western Electric Co., Inc.,* 614 F.2d 1300, 1315 (5th Cir.1980). Plaintiff is able to satisfy many of the *prima facie* elements because he is black, sought and was qualified to drive a tractor-trailer, yet was not allowed to do so because the tractor-trailer driving positions were awarded to two (2) white employees. The problem for Plaintiff, however, is that he is unable to show that the tractor-trailer driver position was a "promotion" over his position of driving a concrete truck.

---

4. Defendant Fulton Concrete claims that the assignment to tractor-trailer driving positions was not a promotion for any individual because an increase in pay did not occur as a result. [Elovich Aff. ¶ 3].

■ To be actionable, an alleged discriminatory action must be both subjectively and objectively adverse. *See Gupta v. Florida Bd. of Regents,* 212 F.3d 571, 583 (11th Cir.2000); *Doe v. Dekalb County School District,* 145 F.3d 1441 (11th Cir. 1998) (adopting an objective test to determine if an employment action is adverse). Moreover, the adversity must be material: that is, it must be more than "some de minimis inconvenience or alteration of responsibilities." *Dekalb County School District,* 145 F.3d at 1453. As the Eleventh Circuit has pointed out, "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Id.* at 1449 (quoting *Smart v. Ball State Univ.,* 89 F.3d 437, 441 (7th Cir.1996)). Otherwise, "every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Id.* (quoting *Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir.1996)). The court in *Graham v. Fla. Dep't of Corrections,* 1 F.Supp.2d 1445, 1449 (M.D.Fla.1998), noted that a "materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."

■ Although the *Graham* court was addressing an allegedly adverse reassignment, the same reasoning applies to a claim that an employee was denied a promotion. *Id.,* 1 F.Supp.2d at 1449–50. A plaintiff asserting a failure to promote claim must be able to show that the position he desired had a greater wage or salary, a more distinguishable title, or significantly more responsibilities. Plaintiff Johnson, however, has pointed to no evidence other than his own opinion that driving a tractor-trailer at Fulton Concrete had any significant advantages over driving a concrete truck. Plaintiff cites to the deposition testimony of Carl Joyner, a Fulton Concrete dispatcher, to support his claim that the tractor-trailer position was a promotion over the concrete truck driver position with higher pay. [Plaintiff's Response to Defendant's Statement of Material Facts ¶ 4]. But Joyner testified to the contrary when he stated that James Williamson "was promoted to that job by—it's not really a promotion. I don't even think there was a pay increase but he asked for the job." [Joyner Dep. at 81]. Although two (2) white employees received tractor-trailer driver positions that Plaintiff Johnson desired, Plaintiff has failed to show that a tractor-trailer driver at Fulton Concrete was a promotion over his position as a concrete truck driver. Because Plaintiff did not suffer an adverse employment action when Charlie Turner and James Williamson were assigned to drive the tractor-trailers, Plaintiff has failed to establish a *prima facie* case of failure to promote, and summary judgment is warranted on this claim.

■ Even assuming *arguendo* that Plaintiff could establish a *prima facie* case, the result would be the same. Defendant has offered a legitimate, nondiscriminatory reason for assigning Turner and Williamson to the tractor-trailer positions, and Plaintiff is unable to show that this stated reason is actually a pretext for race discrimination.

■ Once a plaintiff has established a *prima facie* case, the burden of production then shifts to the defendant to articulate some legitimate, non-discriminatory reason for the action taken. *See Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094). To satisfy its burden of production, "the defendant need not persuade the court that it was

actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* (quoting *Burdine,* 450 U.S. at 254–55, 101 S.Ct. at 1094). "[T]o satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id.* (quoting *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096). The defendant's burden in the rebuttal stage is "exceedingly light." *Walker v. NationsBank of Florida,* 53 F.3d 1548, 1556 (11th Cir. 1995); *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir.1983).

In the present case, Plant Manager Barry Joseph made the decision to assign Turner and Williamson to drive the tractor-trailers in September of 2001. Joseph stated in his affidavit:

> When I assigned Charlie Turner to drive a tractor trailer in September, 2001, I did so because he had been with Fulton Concrete for approximately four years and he had demonstrated a longtime record of safe driving. When I assigned James Williamson to drive a tractor trailer in September, 2001, I did so because he had been with Fulton Concrete for approximately four years and because we had helped James Williamson get his Class A license by letting him use a Fulton Concrete truck to take his Class A license road test.... At the time I assigned Charlie Turner and James Williamson to drive the tractor trailers, Roland Johnson had only been with Fulton Concrete for four months.

[Joseph Aff. ¶¶ 7, 8, 10]. Defendant Fulton Concrete has clearly satisfied its exceedingly light burden of producing a legitimate, nondiscriminatory reason for the tractor-trailer assignments.

Once a defendant meets its burden of production, "the presumption of discrimination created by the McDonnell Douglas framework 'drops from the case,' and 'the factual inquiry proceeds to a new level of specificity.'" *Combs,* 106 F.3d at 1528 (quoting *Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1094–95 n. 10). The plaintiff then "has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." *Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir.1997) (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825). Plaintiff's proof of pretext merges with his "ultimate burden of showing that the defendant intentionally discriminated against the plaintiff." *Id.* (citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 2749, 125 L.Ed.2d 407 (1993)). This task is a highly focused one.

The court "must, in view of all the evidence, determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs,* 106 F.3d at 1538 (quoting *Cooper–Houston v. Southern Ry. Co.,* 37 F.3d 603, 605 (11th Cir.1994)). The court's task is to "evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence.'" *Id.* (quoting *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1072 (3rd Cir. 1996) (en banc), *cert. denied,* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997)). "[A] plaintiff may not in all cases merely rest on the laurels of [his] *prima facie* case in the face of powerful justification evidence offered by the defendant."

*Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 596 (11th Cir.1987). Plaintiff can either directly persuade the court that a discriminatory reason more likely motivated the employer or show indirectly that the employer's proffered explanation is unworthy of credence. *See Miles v. M.N.C. Corp.*, 750 F.2d 867, 870–71 n. 4 (11th Cir.1985).

Plaintiff Johnson has offered no evidence that Defendant Fulton Concrete's stated reason for assigning the tractor-trailer positions to Turner and Williamson-i.e., more experience with the company-was a pretext for race discrimination.[5] Therefore, even if the court assumes arguendo that Plaintiff could establish a *prima facie* case of failure to promote, Plaintiff has failed to create a genuine issue of fact with respect to this claim.

██ For all these reasons, the undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 77] be **GRANTED** on Plaintiff's failure to promote claim.[6]

## B. Plaintiff's Termination Claim

Plaintiff Johnson next claims that he was terminated from his employment with Defendant Fulton Concrete in retaliation for prior complaints of discrimination and on the basis of his race, black.

### 1. Retaliation

██ Title VII provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a *prima facie* case of retaliation, "a plaintiff must show that (1)[he] engaged in statutorily protected expression; (2)[he] suffered an adverse employment action; and (3) the adverse action was causally related to the protected expression." *Wideman v. Wal–Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir.1998). The plaintiff " 'need not prove the underlying claim of discrimination which led to [his] protest,' however, the plaintiff must have had a reasonable good faith belief that the discrimination existed." *Holifield*, 115 F.3d at 1566 (citing *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir.1989)). Moreover, "[i]t is important to note that this circuit interprets the causation requirement broadly: 'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.' " *Robinson*, 870 F.Supp. at 1083 (citing *EEOC v. Reichhold Chems., Inc.*, 988 F.2d 1564, 1571 (11th Cir.1993)); *see also Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir.1998).

Plaintiff satisfies the first element because he called the EEOC shortly after he

---

5. Plaintiff seems to imply that evidence of race discrimination can be established by Joseph's statement to Plaintiff that he "looked good in [his] concrete truck." [Pla. Dep. at 249; Doc. 81 at 13]. The court concludes that a reasonable jury would find that this statement is completely innocuous and creates no inference of race discrimination whatsoever.

6. The court notes that there is an additional reason that summary judgment is warranted on the Title VII portion, but not the § 1981 portion, of Plaintiff's failure to promote claim. Plaintiff did not reference the tractor-trailer assignment in his EEOC charge; he only listed his termination as an adverse action. [Doc. 77, Ex. 12]. As this court has stated, "If not reasonably related, the court is precluded from considering claims not raised in the EEOC complaint." *Waldemar v. American Cancer Society*, 971 F.Supp. 547, 553 (N.D.Ga.1996).

was told that two (2) other employees were assigned to drive tractor-trailers, Plaintiff had expressed interest in driving these vehicles instead of the concrete truck he was driving for the company at the time. [Pla. Dep. at 248–50]. While Plaintiff was on the phone with an EEOC employee, he asked if she would mail him a complaint because he wanted to file a charge of discrimination. [Pla. Dep. at 250]. Plaintiff Johnson also satisfies the second element because he was terminated from his employment with Fulton Concrete.

 Defendant acknowledges that Plaintiff can establish the first two (2) *prima facie* elements. However, the company argues that Plaintiff cannot show a causal connection between his call to the EEOC and his termination. [Doc. 77 at 14–16]. According to Defendant, "Johnson has absolutely no record evidence that Fulton Concrete, and specifically Barry Joseph the decision maker, ever had any knowledge prior to his termination either that he had made any contact with the EEOC or that he had any complaint of discrimination regarding the tractor trailer driving assignment." [Doc. 77 at 16]. The court finds Defendant's argument unpersuasive and concludes that, for summary judgment purposes, Plaintiff Johnson has established a *prima facie* case of retaliation.

Plaintiff Johnson claims that he made the phone call to the EEOC in front of Joseph, the decision maker. Plaintiff stated in his affidavit, "I called the EEOC in front of Barry Joseph, while he was standing approximately six feet from me, and other co-workers, and requested and [sic] EEOC complaint form to file for race discrimination against Fulton Concrete Company." [Pla. Aff. ¶ 7]. Although Plaintiff admits that he never directly told Joseph about his phone call to the EEOC, Plaintiff contends that Joseph learned of it from his co-workers. Plaintiff stated, "After receiving the EEOC complaint form I took it to Fulton Concrete on several occasion [sic] many of my co-workers saw me with this form and looked at the form." [Pla. Aff. ¶ 8].

Plaintiff also claims that Barry Joseph's son-in-law, Lane Atkins, asked Plaintiff about the filing of his charge. Plaintiff testified that Atkins asked him, "Roland, what did you ever do about that EEO complaint you said you filed against Barry?" [Pla. Dep. at 250]. After Plaintiff asked Atkins what he was talking about, Atkins allegedly said, "You know, you remember you said you was going to file the EEO complaint against Barry because Barry let Dog [James Williamson] have that position when he had just got his driver's license." [Pla. Dep. at 250–51]. Although not strong evidence, the fact that Joseph's son-in-law was aware of Plaintiff's contact with the EEOC is relevant to Plaintiff's claim.

However, the evidence which most supports Plaintiff's claim that Joseph was aware of his phone call to the EEOC comes from the deposition testimony of Carl Joyner, a Fulton Concrete dispatcher. Joyner testified that although he was not present when Plaintiff made the phone call to the EEOC, he became aware of the phone call afterwards. [Joyner Dep. at 88–91]. Relevant to the discussion at hand is the fact that Joyner, although not certain, believed Barry Joseph may have been the person who told him about Plaintiff's phone call to the EEOC. Joyner testified, "I am aware that … Mr. Johnson made the phone call…. I don't know whether I heard it from the guys or from Barry. I don't remember. But it was told to me." [Joyner Dep. at 89]. When all these facts are taken in the light most favorable to Plaintiff, this court finds that a reasonable jury could conclude that Barry Joseph was

aware of Plaintiff's phone call to the EEOC to complain of discrimination.

█ Because Plaintiff has established a *prima facie* case of retaliation, the burden of production then shifts to Defendant to articulate some legitimate, non-discriminatory reason for terminating Plaintiff's employment. *See Combs,* 106 F.3d at 1528 (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094). As discussed *supra,* "to satisfy this intermediate burden, the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory [or retaliatory] animus." *Id.* (quoting *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096).

Defendant Fulton Concrete claims that it terminated Plaintiff Johnson's employment because the company believed that Plaintiff's behavior had caused other employees to feel threatened for their safety. [Joseph Aff. ¶ 4]. Even Plaintiff has acknowledged that this stated reason is legitimate and nondiscriminatory. [Pla. Dep. at 236–37]. Defendant has easily met its light burden of production. As a result, Plaintiff "has the opportunity to demonstrate that the defendant's articulated reason for the adverse employment action is a mere pretext for discrimination." *Holifield,* 115 F.3d at 1565 (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825). The court must "determine whether the plaintiff has cast sufficient doubt on the defendant's proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that the employer's proffered 'legitimate reasons were not what actually motivated its conduct.'" *Combs,* 106 F.3d at 1538 (quoting *Cooper–Houston,* 37 F.3d at 605).

█ The undersigned finds that Plaintiff Johnson has failed to demonstrate pretext.[7] It is undisputed that Plaintiff Johnson got into a heated argument with a fellow employee named Bill Taylor. [Pla. Dep. at 200–10; Joseph Dep. at 20–21]. After Plaintiff left the shop following the argument, he returned to the back of the shop and knocked on the door. [Pla. Dep. at 207–08; Joseph Dep. at 20–21]. When Plant Manager Barry Joseph opened the door, Plaintiff was holding a black bag over his shoulder and one of his hands was in the bag. [Pla. Dep. at 210; Joseph Dep. at 20–21]. Plaintiff denies that he threatened Taylor or anyone else during this time or that he said to Taylor, as reported by numerous witnesses, "Hold on one minute, I've got something for you," and "You want some of this." [Joseph Dep. at 20–21; Hermann Dep. at 16–17; Green Aff.; Salter Aff.]. Nevertheless, Plaintiff acknowledges that when he returned to the shop immediately following his face-to-face argument with Taylor, he was carrying a bag with one hand inside the bag. [Pla. Dep. at 210]. Employees in the shop stated that they felt threatened by Plaintiff's actions. Jason Hermann, a tractor-trailer driver, testified that he believed Plaintiff had a gun inside the bag he was carrying. [Hermann Dep. at 16–17]. Terry Green stated that when he saw Plaintiff Johnson return to the shop with his hand in the bag, he felt his "life was in danger" and that he left immediately. [Green Aff.]. Alvin Salter made a similar statement and, like Green, left the shop immediately after he saw Plaintiff. [Salter Aff.].

Plaintiff has pointed to no evidence which would cast doubt on Defendant's claim that it fired Plaintiff because he made other employees feel threatened. Moreover, the employees' claims that they

---

7. In fact, it does not appear that Plaintiff has even argued that Defendant's proffered reason is a pretext for retaliation. [Doc. 81 at 17–18].

were worried about their safety are entirely reasonable, given the fact that they had witnessed Plaintiff return to the shop with his hand in a bag after getting into a heated argument with a co-worker. Plaintiff testified repeatedly that he did not, in fact, have a gun in his bag. [Pla. Dep. at 207–14]. But this is not relevant to the pretext issue before the court. The issue is whether the employer actually believed that the employee's performance justified termination at the time the decision was made. "Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the [law] does not interfere.'" *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988)). As long as Barry Joseph honestly believed that Plaintiff Johnson's actions were threatening and that this belief warranted termination, pretext is not established even if Joseph was mistaken in his belief. *See Smith v. Papp Clinic, P.A.*, 808 F.2d 1449, 1452–53 (11th Cir.1987).

The court finds that a reasonable jury could not conclude that Defendant's proffered reason for terminating Plaintiff's employment was actually a pretext for retaliation. Accordingly, it is **RECOMMENDED** that Defendant Fulton Concrete's summary judgment motion [Doc. 77] be **GRANTED** on Plaintiff's retaliatory termination claim.

### 2. Race Discrimination

 Plaintiff also claims that he was terminated on the basis of his race. To establish a *prima facie* case of race discrimination in his termination, Plaintiff must prove that: (1) he is a member of a protected class; (2) he was terminated from his employment; (3) he was qualified

to do the job; and (4) his employer treated similarly situated employees outside his classification more favorably. *See Lathem v. Dep't of Children and Youth Servs.*, 172 F.3d 786, 792 (11th Cir.1999); *Holifield*, 115 F.3d at 1562. Because Plaintiff Johnson is black, was fired from his job, and was at least minimally qualified to perform his job, he has satisfied the first three (3) elements. However, the court finds that Plaintiff is unable to establish a *prima facie* case of racially discriminatory termination because he cannot show that Defendant Fulton Concrete treated a similarly situated non-black employee more favorably than Plaintiff.

Plaintiff Johnson contends that "many arguments and altercations have taken place at Fulton Concrete" but that none of the employees involved "were given any type of discipline." [Doc. 81 at 9]. This vague and conclusory allegation obviously is insufficient to create an issue of fact for trial. *See Ratliff v. DeKalb County*, 62 F.3d 338, 341 (11th Cir.1995) ("[P]laintiffs seeking to avoid summary judgment ... must present specific nonconclusory facts that would support a jury verdict against the particular defendant on discriminatory intent."). The only employees that Plaintiff specifically names are Bill Taylor and another employee named Jason Hermann.

Plaintiff Johnson claims that Bill Taylor, who is white, was a similarly situated employee because Taylor was the employee who got into the argument with Plaintiff. [Doc. 81 at 9]. Yet, Plaintiff was terminated, and Taylor was not even disciplined. According to Plaintiff, Taylor was even more culpable for the argument with Plaintiff because he was the instigator. Plaintiff writes, "Mr. Taylor approached the Plaintiff first yelling and cursing at him with his fists clenched. Mr. Johnson was terminated for this incident and Wil-

liam Taylor was not terminated for his actions." [Doc. 81 at 9].

The problem with Plaintiff's argument, and the reason it is unpersuasive, is that he fails to address the conduct for which he was terminated. In *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306 (11th Cir.), *partial superseding opinion on denial of rehearing*, 151 F.3d 1321 (11th Cir. 1998), the Eleventh Circuit emphasized that the proper comparison is to employees that are "similarly situated in all relevant respects." 137 F.3d at 1311 (citing *Holifield*, 115 F.3d at 1562). Specifically, the court wrote, "[i]n determining whether employees are similarly situated for purposes of establishing a *prima facie* case, it is necessary to consider whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.* (citing *Holifield*, 115 F.3d at 1562). *See also Lathem*, 172 F.3d at 793 (the relevant inquiry is whether the employer subjected similarly situated employees to different employment policies).

While Plaintiff argues that he and Taylor were similarly situated because they were both involved in the argument on November 20, 2001, the evidence before the court establishes that Plaintiff was fired for his threatening behavior after the argument, not for actually being in the argument. Even Plaintiff's own testimony reveals that Plant Manager Barry Joseph had no intention to take any disciplinary action against Plaintiff until after he returned to the shop following his argument with Taylor. [Pla. Dep. at 208–10]. When Plaintiff returned to the back door of the shop after having made a trip to his truck, he had his hand in a bag that was strapped over his shoulder. [*Id.*]. Employees in the shop began to leave immediately after see-

ing Plaintiff because they were concerned for their safety. [Joseph Dep. at 20–21; Hermann Dep. at 16–17; Green Aff.; Salter Aff.]. Because Plaintiff was terminated for his threatening actions, and not for arguing with Taylor, Plaintiff is unable to show that he and Taylor were "similarly situated in all relevant respects." *Jones*, 137 F.3d at 1311.

Plaintiff also claims that a white employee named Jason Hermann was treated more favorably than Plaintiff although involved in similar misconduct. Plaintiff writes, "Fances [sic] Miah states in his affidavit that he has witnessed Jason, a Caucasian employee, pull out his knife on other employees, including Plant Manager Barry Joseph and has never been disciplined for his actions." [Doc. 81 at 9–10]. The "affidavit" cited to by Plaintiff is from a person named Francis Miah.[8] [Doc. 81, Ex. 21]. Miah wrote, "I know for fact [sic] that Jason Hermann sometimes pulls his knife out on Roland Johnson, Barry Joseph, David Joyner, Billy Watkins and myself." [Doc. 81, Ex. 21]. Plaintiff also testified about witnessing incidents where Hermann pulled out a knife in front of other employees. [Pla. Dep. at 306–09]. In fact, Plaintiff stated that Hermann and many other mechanics frequently pull out their knives while at work. [*Id.*]. This alleged misconduct, however, is in no way similar to Plaintiff's.

As Plaintiff stressed repeatedly in his deposition, the mechanics who pulled their knives out while at work were not doing this in a threatening way. Instead, they were simply joking around and engaging in horseplay. [*Id.*]. Plaintiff testified, "[S]ome of the mechanics have knives, you know, because they are always cutting a lot of the stuff around the shop. . . . [T]hey

8. This document need not be considered by the court because it is not in proper form.

[Doc. 81, Ex. 21].

joke around and horseplay with knives." [Pla. Dep. at 307–08]. Plaintiff stated that Hermann, along with other mechanics, pull their knives out "all the time" and are "always playing ... just joking. That's the way they joke at Fulton Concrete." [Pla. Dep. at 308]. Given this testimony, it is clear that not even Plaintiff believed that the conduct of Hermann and the other employees was threatening. This is in sharp contrast to Plaintiff's behavior, which was perceived by all the employees in the shop who witnessed it to be threatening.[9] [Joseph Dep. at 20–21; Hermann Dep. at 16–17; Green Aff.; Salter Aff.].

For these reasons, the undersigned concludes that Plaintiff Johnson has failed to show that Defendant Fulton Concrete treated similarly situated employees outside his classification more favorably. *See Lathem*, 172 F.3d at 792. Plaintiff is unable to make out a *prima facie* case of racial discriminatory termination. It is, therefore, **RECOMMENDED** that Defendant Fulton Concrete's summary judgment motion [Doc. 77] be **GRANTED** on Plaintiff's claim that he was terminated from his employment on the basis of his race.

### 3. Plaintiff's Allegation of Hostile Work Environment

 In his brief responding to Defendant's summary judgment motion, Plaintiff alleges that he was subjected to a racially hostile work environment. [Doc. 81 at 10–13]. Defendant correctly points out that Plaintiff did not allege any facts in his EEOC charge or his complaint to support a finding of a hostile work environment. [Doc. 23; Doc. 77, Ex. 12; Doc. 99 at 9]. Summary judgment is appropriate

on this basis alone. *See Waldemar*, 971 F.Supp. at 553. Moreover, Plaintiff has pointed to nothing which even comes close to the level of objectively severe or pervasive hostility that is required to survive summary judgment on a hostile work environment claim. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). The only action or statement to which Plaintiff refers was Barry Joseph's comment to Plaintiff that he "looked good in [his] concrete truck." [Pla. Dep. at 249; Doc. 81 at 13]. Needless to say, a reasonable person could not find this statement to be so denigrating that it created "an atmosphere charged with racial hostility." *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521 (11th Cir.1995). In fact, it is inconceivable to the court how Plaintiff can even claim that this statement created a racially hostile work environment. The undersigned **RECOMMENDS** that Defendant's summary judgment motion [Doc. 77] be **GRANTED** on Plaintiff's hostile work environment claim.

### C. Plaintiff's State Law Claim

Because the court recommends granting summary judgment on all of Plaintiff's federal claims, his only remaining claim is a Georgia state law claim for negligent retention. [Doc. 23]. Twenty-eight U.S.C. § 1367(c)(3) provides, in pertinent part, "The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if ... the district court has dismissed all claims over which it has original jurisdiction ...." Accordingly, the court **RECOMMENDS** that supplemental jurisdiction not be exercised over

---

9. Further evidence of a lack of racial animus in the decision to terminate Plaintiff's employment is the fact that on at least three (3) different occasions before Plaintiff began working for Fulton Concrete, a white employee was terminated for getting into a verbal confrontation with a member of management or with another employee. [Doc. 81, Exs. 28–30]. In other words, these employees were terminated for non-similar offenses that the company considers to be less severe than Plaintiff's threatening actions.

Plaintiff's remaining state law claim and that it be dismissed without prejudice. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

**IV. Conclusion**

For all the foregoing reasons and cited authority, the undersigned **RECOMMENDS** that Defendant Fulton Concrete's summary judgment motion [Doc. 77] be **GRANTED** on all of Plaintiff's federal claims. The court also **RECOMMENDS** that Plaintiff's state law claim of negligent retention be **DISMISSED** without prejudice.

The Clerk is **DIRECTED** to terminate this reference.

March 5, 2005.