[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 4, 2006
THOMAS  K. KAHN
CLERK

No. 05-13677
Non-Argument Calendar

_____

D. C. Docket No. 03-02844-CV-ODE-1

CARLA WESTON-BROWN,

Plaintiff-Appellant,

versus

BANK OF AMERICA CORPORATION,

Defendant,

BANC OF AMERICA, LEASING AND CAPITAL, LLC,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 4, 2006)

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Carla Weston-Brown ("Brown"), a former employee of Banc of America,

Leasing and Capital LLC ("BOA"), appeals the district court's grant of BOA's motion for summary judgment as to her complaint filed pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et. seq.* In her complaint, Brown alleged that she was denied a promotion because of her race, African-American, and that she was removed from a client's account and later terminated in retaliation for her complaint about race discrimination. On appeal, Brown alleges that the district court erred when it held that she failed to put forth a prima facie case of discriminatory failure to promote because she failed to show that she suffered an adverse employment action. Brown further argues that the district court erred when it held that she failed to establish a prima facie case of retaliation because she did not to show a causal connection between her complaint of discrimination and BOA's decision to remove her from a client's account and later terminate her employment.

## I. Background

Brown worked as an Operations Analyst in BOA's Leasing Department. In this position, Brown's immediate supervisor was Wesley Yount, who was in turn supervised by Anthony Hagen. Brown's principal responsibility involved funding loans for O/E Systems, Inc. ("O/E").

In 2001, BOA needed to reduce its workforce. Therefore, in August or

2

September of 2001, Yount ranked his subordinates on factors including their annual evaluation rating, work ethic, and quality of work. He ranked Brown ninth out of ten associates. Ann Hager, a white female, was ranked tenth and was selected for layoff. Brown was retained at this time.

After the 2001 layoffs, between January of 2002 and April of 2002, Yount documented several complaints about Brown's work performance, attitude, and attendance. Brown's 2002 performance evaluation noted that she needed to complete her work more promptly, return calls more promptly, be more tactful with her customers, improve her communication with O/E, and not reveal her frustrations to her customers.

After Brown received her review, in approximately June of 2002, O/E, Brown's primary customer, raised complaints about Brown in a routine vendor survey performed by BOA's marketing department. In the survey, two of O/E's employees who worked most closely with Brown criticized her attitude and work habits. After reviewing the results of the vendor survey, on June 20, 2002, Yount recommended to Hagen that Brown be removed from the O/E account. Hagen responded on the same date that Yount should proceed as he believed appropriate. BOA then informed Brown that, due to issues raised with her performance in the vendor survey, BOA was reassigning the O/E account to another BOA employee.

3

Brown was assigned a new customer, Flowers Bakery.

In approximately May of 2002, Rana Wilson, a Senior Manager of Operations, listed an Operations Consultant position on BOA's job posting system. Wilson sought an H-5 manager-level associate to oversee various accounting functions in the "terminations group" and to assist with complex spreadsheet designs. "H-5" refers to the position's job-band, or level within BOA's hierarchy of positions. Lower-level positions have a higher band number. Therefore, a position with a job-band of H-6 is a lower level than a position with a job band of H-5, which means a move from H-6 to H-5 is a promotion. H-5 is a management-level position.

On approximately May 9, 2002, Brown applied for a promotion from her H-6 Operations Analyst position to the H-5 Operations Consultant position. There were several other candidates for the position, including Yvonne Ferrell, a white associate from Wilson's department. However, soon after posting the Operations Consultant position, Wilson's department underwent a restructuring that altered the personnel needs of her department. Specifically, Wilson's department entered into a "securitization," in which BOA sold off certain assets and maintained those assets as an agent. Wilson needed a management-level associate to oversee the new multi-million dollar portfolio created by the securitization. However, she was

4

not authorized to hire a new manager in addition to the one for which a notice had already been posted. Therefore, she asked the personnel department to alter the job description in the previously-posted H-5 Operations Consultant notice to include job responsibilities related to the securitization. Wilson then divided up some of the terminations responsibilities, which she had originally intended to assign to the new manager, among her existing associates.

Wilson then selected Yvonne Ferrell to perform some of the lower-level terminations responsibilities that had previously been included in the job description for the new Operations Consultant position. Because of her additional responsibilities, Ferrell received a promotion from job band H-7 to job band H-6, the same band as Brown's. Ferrell did not perform all of the duties listed in the original positing for the Operations Consultant position.

On July 31, 2002, the posting for the H-5 Operations Consultant position for which Brown applied was removed from BOA's website, due to the personnel department's mistaken belief that it had been filled by Ferrell. Thereafter, Wilson informed the personnel department that it had erroneously closed the position and that she wanted to change some of the responsibilities of the posted position to include the new securitization duties. On August 30, 2002, BOA posted on the company website the revised position description, including the new securitization

duties.

On or about July 24, 2002, Brown filed an internal grievance with BOA alleging discriminatory practices relating to the Operations Consultant position for which she applied. Brown believed the position had been awarded to Ferrell. BOA investigated Brown's claim of discrimination and concluded that no discrimination occurred. Specifically, BOA determined that, although there was a restructuring and miscommunication relating to the post, the position remained open and that Brown remained a candidate.

On September 3, 2002, Wilson interviewed Brown for the revised H-5 Operations Consultant position. Wilson later awarded the position to Yvonne Goodlet, a white associate. At the summary judgment stage, Brown did not contend that Goodlet's selection was discriminatory, nor does she make this argument on appeal.

Later in 2002, BOA underwent a second reduction in force. Yount again ranked his subordinates in order to select the employees to be laid off. He again ranked Brown ninth out of his existing employees, which made Brown the lowest ranked employee in his group. The rankings were provided to Hagen who selected Brown for layoff in November of 2002 based on her status as the lowest-ranked employee in Yount's group.

Brown filed suit, alleging that she was denied a promotion because of her race, and that she was removed from a client's account and later terminated in retaliation for complaining about race discrimination. The district court granted summary judgment in favor of BOA on both the failure to promote and the retaliation claims.

We review a district court's order granting summary judgment de novo and view all the materials and "factual inferences in the light most favorable to the non-moving party." *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1252 (11th Cir. 2003), *cert. denied*, 540 U.S. 1182, 124 S. Ct. 1422, 158 L. Ed. 2d 86 (2004). "Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Id.* (internal quotation omitted).

## II.    Failure to Promote

At the outset, we note that Brown is not contesting the fact that she did not receive the H-5 Operations Consultant position that was awarded to Goodlet. Rather, Brown is challenging on appeal the selection of Ferrell for the original H-6 terminations position. Brown argues that BOA's failure to place her in that position constitutes an adverse employment action because she would have been placed in that position at an H-5 level, thereby making her eligible for a pay

7

increase and making her immune from company layoffs.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Where a plaintiff supports her Title VII claim with circumstantial evidence, we analyze her claim using the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).

Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination, which creates a presumption of discrimination. *Id.* The employer then has the burden of production to establish "a legitimate, nondiscriminatory reason for its actions." *Id.* If the employer satisfies its burden, thus rebutting the presumption of discrimination, the plaintiff must then demonstrate that the employer's reason is a pretext for discrimination. *Id.* A prima facie case of discriminatory failure to promote is established where the plaintiff shows that "(1) she is a member of a protected class; (2) she was qualified and applied for the promotion; (3) she was rejected despite her qualifications; and (4) other equally or less qualified employees who were not

8

members of the protected class were promoted." *Id.* at 1089.

A plaintiff suing under Title VII must also establish that she suffered an adverse employment action. *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). To establish an adverse employment action, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment . . . [,] as viewed by a reasonable person in the circumstances." *Id.* at 1239 (emphasis in original). "[T]he asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Id.* Moreover, the adverse action must be material: That is, it must be more than "some de minimis inconvenience or alteration of responsibilities." *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1453 (11th Cir. 1998). As the district court noted, in a failure to promote claim, a plaintiff "must be able to show that the position he desired had a greater wage or salary, a more distinguishable title, or significantly more responsibilities." *Johnson v. Fulton Concrete Co.*, 330 F. Supp. 2d 1330, 1339 (N.D. Ga. 2004).

The record in this case reveals that Wilson first posted the Operations Consultant position and then learned that BOA was entering a securitization, a process that demanded a management-level employee. Wilson decided to remove the initial Operations Consultant job posting, assign some of those duties to

Ferrell, and then re-post it to include the additional securitization duties. The record further reflects that the H-6 terminations position awarded to Ferrell did not have a greater wage or salary, or a more distinguishable title, or significantly more responsibilities than the H-6 Operations Analyst position that Brown held.

Brown cannot meet her duty to demonstrate that BOA's failure to select her subjected her to an adverse employment action. Brown does not dispute that after Ferrell received the new position, Ferrell was only promoted to level H-6 – the same level as Brown's existing position. Brown nevertheless argues that she suffered an adverse employment action because, had she been awarded the position, she would have been given the position at an H-5 level. She further argues that, had she been awarded the position, she would have been immune from company layoffs. However, as the district court found, there is no evidence in the record to support either one of these arguments. Brown's arguments, then, are merely speculation and, as such, cannot establish that she suffered an adverse employment action. *See Davis*, 245 F.3d at 1239. Moreover, because the position that Ferrell received was at an H-6 level, the same level as Brown's existing position, Brown did not suffer "a *serious and material* change in the terms, conditions, or privileges of employment." *See id.* (emphasis in original). Therefore, the district court did not err in finding that Brown did not establish a

prima facie case of discriminatory failure to promote because there is no evidence that Brown suffered an adverse employment action.

However, even if Brown had established a prima facie case of discriminatory failure to promote, we agree with the district court that Brown failed to raise a genuine factual question as to whether BOA's proferred reasons for not selecting her for the position were a mere pretext for discrimination. Once a plaintiff who asserts a Title VII discrimination claim establishes her prima facie case, the employer then has the burden of production to establish "a legitimate, nondiscriminatory reason for its actions." *Wilson*, 376 F.3d at 1087. The employer's burden is "exceedingly light." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004) (internal quotation omitted), *cert. denied*, 126 S. Ct. 478 (2005). The employer "need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Id.*

If the employer satisfies its burden, thus rebutting the presumption of discrimination, the plaintiff must then demonstrate that the employer's reason is a pretext for discrimination. *Wilson*, 376 F.3d at 1087. "To show that the employer's reasons were pretextual, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable

11

factfinder could find them unworthy of credence." *Cooper*, 390 F.3d at 725 (internal quotation omitted).

Brown has not established a prima facie case of discrimination because she did not show that she suffered an adverse employment action. Nonetheless, assuming that Brown did establish her prima facie case, her claim must still fail because Brown failed to show how BOA's proferred reasons for not selecting her were pretextual. BOA contends that Wilson assigned the duties to Ferrell because Ferrell was already in Wilson's group and because Ferrell could perform the new terminations responsibilities in conjunction with some of her existing duties. As such, BOA met its "exceedingly light" burden of production with respect to its proffer of legitimate, nondiscriminatory reasons for its hiring decision. *See id*.

Under the *McDonnell Douglas* framework, Brown did not sustain her burden to establish that BOA's reasons are pretextual. She failed to offer any argument or evidence that tended to suggest that BOA's reasons are so incredible that "a reasonable factfinder could find them unworthy of credence." *Id*. Brown's argument that Ferrell received the Operations Consultant position does not address BOA's proferred reasons for awarding Ferrell the position. Thus, Brown failed to establish that BOA's proferred reasons for its employment decision were pretextual, and therefore, her failure to promote claim necessarily fails.

## III. Retaliation

On appeal, Brown also alleges that the district court erred in granting summary judgment in favor of BOA on her retaliation claim after concluding that she had failed to demonstrate a causal connection between her complaint of discrimination and BOA's decision to remove her from the O/E account and eventually terminate her employment. As a preliminary matter, we note that Brown is not asserting a separate retaliatory discharge claim. Rather, she argues that BOA removed her from the O/E account in retaliation for her complaint and, as a result, BOA laid her off because her new client, Flowers Bakery, generated a minimal amount of work.

To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000).

To establish a causal connection between participation in a protected activity and adverse employment action, "a plaintiff need only show that the protected activity and the adverse action were not wholly unrelated." *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000) (internal

quotations omitted). To satisfy this showing, a plaintiff must generally establish "that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Id.* "[C]lose temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection." *Id.* However, when an employer makes a tentative decision *before* protected activity occurs, the fact that an employer proceeds with such a decision is *not* evidence of causation. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 272, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) (per curiam) (holding that, where an employer contemplated transferring an employee before the employer learned that the employee filed a Title VII suit, the employer's decision to proceed "along lines previously contemplated, though not yet definitively determined," did not establish evidence of causality).

On appeal, Brown argues that there is evidence sufficient to demonstrate a causal connection between her internal complaint of discrimination and her removal from the O/E account because she was not removed from the account until after she filed her complaint. She further argues that BOA did not remove her from the account until after she filed her complaint, despite the fact that BOA was aware of the vendor survey in which O/E complained about her.

14

Contrary to Brown's assertions, any inference of a causal connection between Brown's complaint and her removal from the O/E account is dispelled by the June 2002 vendor survey in which O/E expressed dissatisfaction with Brown's performance. The record evidence establishes that, based on this survey, Yount informed his supervisors on June 20, 2002 – well before the July 24, 2002, date on which Brown filed her internal complaint – that he felt that it would "be prudent to remove [Brown] from interaction with the funding administrators at O/E." Yount's desire to wait until he received the final report and all the facts before he carried out his plan of removing Brown from the O/E account is not evidence of causation merely because he carried out his pre-complaint decision after Brown filed her complaint. *See Clark County Sch. Dist.*, 532 U.S. at 272, 121 S. Ct. at 1511. Because Brown's arguments on appeal and before the district court, without more, do not establish that her discriminatory complaints are causally connected to the removal of the O/E account and her subsequent termination, the court did not err in finding a lack of a causal connection.

Upon review of the record, and upon consideration of the parties' briefs, we discern no reversible error. Accordingly, we affirm the district court's grant of BOA's motion for summary judgment.

**AFFIRMED.**