[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 28, 2012
JOHN LEY
CLERK

No. 11-10800
Non-Argument Calendar

_____

D.C. Docket No. 1:08-cv-03533-JEC

CAVANAUGH WEBB,

Plaintiff-Appellant,

versus

INTERNATIONAL BUSINESS MACHINES CORPORATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 28, 2012)

Before TJOFLAT, CARNES and ANDERSON, Circuit Judges.

PER CURIAM:

Cavanaugh Webb, an African American, appeals the district court's grant of

summary judgment for International Business Machines Corporation ("IBM"), as to his race discrimination claim, raised pursuant to Title VII, 42 U.S.C. § 2000e-2(a)(1), and 42 U.S.C. § 1981(a).[1] Webb alleged that similarly situated white employees at IBM had received more support, resources, and opportunities to advance, and to succeed once in management than he did because of their race. Specifically, Webb asserted that he suffered three adverse employment actions because of his race: (1) IBM's selection of Clare Peterson, a Caucasian female, over Webb, to fill in as the "acting" Business Unit Executive ("BUE") for a period of approximately two months; (2) IBM's selection of Kevin O'Connor, a Caucasian male, to permanently fill the BUE position; and (3) IBM's selection of Webb over Peterson for a resource action to reduce staff ("the resource action").

The district court found that Webb failed to establish a *prima facie* case of racial discrimination in that: (1) Webb did not suffer an adverse employment action with regard to IBM's decision to appoint Peterson instead of him as the temporary "acting" BUE for a two-month period while it filled the vacant BUE

---

[1] Webb's complaint also alleged sex discrimination in violation of Title VII, and included as a defendant Webb's manager, Joseph Rueda. However, the district court granted IBM's initial motion for summary judgment as to Webb's sex discrimination claim because he failed to administratively exhaust the claim, and the court dismissed Rueda as a defendant because Webb failed to serve him with process. Because Webb fails to mention these issues on appeal, they are abandoned. *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (holding that issues not briefed on appeal by a *pro se* litigant are deemed abandoned).

position; (2) Webb did not apply for the job with regard to the vacant BUE position; and (3) Webb failed to show that he was selected for the resource because of his race. Moreover, the district court concluded that, even assuming that Webb established a *prima facie* case, he failed to show that IBM's legitimate, nondiscriminatory reasons for its actions–that Webb failed to apply for the BUE position and that Peterson was better qualified–were pretext for racial discrimination.

In his *pro se* brief on appeal, regarding the "acting" BUE position, Webb argues that the district court erred in determining that there was no adverse employment decision because the district court "applied too rigid of a standard, apparently requiring some sort of direct economic impact." Webb argues for the first time on appeal that his "loss of prestige" should have been considered, given that IBM chose a junior and less experienced person for the "acting" BUE position, which Webb asserts led to the resource action and impacted his marketability.

Regarding the permanent BUE position, Webb argues that a plaintiff need not show that he applied for a promotion to establish a *prima facie* case where the employer uses an informal promotion system that does not post openings or take applications. Webb argues that because IBM used an informal system, he only

needed to show that IBM had some reason or duty to consider him for the promotion. Webb argues that the evidence contradicted the court's finding that IBM used a formal system, given that: (1) IBM admitted that there was no formal written policy; and (2) IBM gave the BUE job to O'Connor before he submitted an application. Webb asserts that because he had several conversations with his manager about his interest in becoming a second-line manager, and his manager had challenged him to perform the BUE role while it was vacant, Webb reasonably believed that he was being considered for the permanent BUE position, especially given that he was qualified for the job and was already performing it.

Regarding the resource action, Webb asserts that his manager admitted that he never even looked at Webb's personnel file, which overwhelmingly proves that he was more qualified than Peterson, and thus, his manager's selection of Webb for the resource action over Peterson was unreasonable and discriminatory. Webb also contends that his manager did not follow the specific guidelines set forth by IBM for the resource action decision, because, among other things, his manager compared some of Peterson's non-management evaluations with Webb's evaluations as a manager. Accordingly, Webb asserts that there was no clear and reasonably specific factual basis for the resource action, and thus it "reeks of pretext for discrimination."

4

We review a district court's grant of summary judgment *de novo*. *Rojas v. Fla. Dep't of Bus. & Prof'l Regs. Pari-Mutual*, 285 F.3d 1339, 1341 (11th Cir. 2002). A court shall grant summary judgment when the evidence before it shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Rojas*, 285 F.3d at 1341-42 (quotation omitted). In reviewing a grant of summary judgment, we will not make credibility determinations or weigh the evidence. *Frederick v. Sprint/United Mgmt. Co.*, 246 F.3d 1305, 1311 (11th Cir. 2001). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2502, 2510 (1986).

Title VII prohibits an employer from discriminating against a person based on the person's race. 42 U.S.C. § 2000e-2(a)(1). Likewise, under 42 U.S.C. § 1981, an employee has a right to be free of discrimination by an employer based on race in the performance of a contract. The elements required to establish an employment discrimination claim under § 1981 are the same as those required under Title VII. *Howard v. B.P. Oil Co.*, 32 F.3d 520, 524 n.2 (11th Cir. 1994).

5

Under Title VII, a plaintiff bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Where, as here, a party seeks to establish discrimination through circumstantial evidence, a Title VII claim is evaluated under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973); *Holifield v. Reno*, 115 F.3d 1555, 1561-62 (11th Cir. 1997). *McDonnell Douglas* provides that the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.

Where direct evidence of discrimination is absent, a plaintiff may establish a circumstantial *prima facie* case of racial discrimination based on disparate treatment by showing several things: (1) he belongs to a racial minority; (2) he was qualified to do the job; (3) he was subjected to an adverse job action; and (4) his employer treated similarly situated employees outside his classification more favorably. *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). In order to prove that he was subjected to an adverse employment action, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001). Although Title VII does not require

6

proof of direct economic consequences in all cases, "the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Id*. "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.* at 1239-40.

We have held that "loss of prestige" is an objective factor that should be considered as part of the reasonable person test, and that diminishment of prestige may also affect an employee's marketability, which is another significant objective factor. *See Doe v. Dekalb County Sch. Dist*., 145 F.3d 1441, 1452 n.19 (11th Cir. 1998) (noting "loss of prestige" as one factor in adverse action determination in discrimination case under the Americans with Disabilities Act ("ADA")). But we have also held that Congress did not intend for Title VII to be implicated where the plaintiff merely "felt some blow to his professional image" and that "[i]n the vast majority of instances . . . an employee alleging a loss of prestige . . . without any tangible harm, will be outside the protection afforded by Congress . . . especially where, as here, the work assignment at issue is only by definition temporary and does not affect the employee's permanent job title or classification." *Davis*, 245 F.3d at 1242-45 (noting that *Doe*, an ADA case, "does

7

not hold that an asserted loss of prestige can transform employer conduct which does not alter the 'terms, conditions, or privileges' of the plaintiff's employment into a proper basis for suit under Title VII").

Where a plaintiff alleges that an employer failed to promote him on the basis of race, the plaintiff can establish a *prima facie* case by showing that: (1) he is a member of a protected class; (2) he was qualified for and applied for the promotion; (3) he was rejected in spite of his qualifications; and (4) the person who received the promotion was not a member of his protected class. *See Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 768 (11th Cir. 2005). However, "when an employer does not formally announce a position, but rather uses informal and subjective procedures to identify a candidate, a plaintiff need not show under the second prong that he applied for the position–only that the employer had some reason to consider him for the post." *Id*.

If the plaintiff establishes a *prima facie* case to support his Title VII action, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse job action. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. If the employer meets this burden, then the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext for discrimination. *Id*. at 804, 93 S.Ct. at 1825; *Holifield*, 115 F.3d at 1564-66.

8

The inquiry into pretext requires us to determine whether, in view of all the evidence, "the plaintiff has cast doubt on the defendant's proffered nondiscriminatory reasons sufficient to allow a reasonable factfinder to determine that the defendant's proffered legitimate reasons were not what actually motivated its conduct." *Silvera v. Orange Cnty. Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001) (quotation omitted). Such evidence, however, must demonstrate "such weaknesses, implausibilities, inconsistences, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Jackson v. Ala. State Tenure Comm'n.*, 405 F.3d 1276, 1289 (11th Cir. 2005) (quotation omitted). "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000). Provided that the proffered reason "is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id*.

In the context of a promotion, "a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [person] who received the position he coveted. A plaintiff must show not merely that the

9

defendant's employment decisions were mistaken but that they were in fact motivated by race." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (quotation omitted). Furthermore, a plaintiff must show that the disparities between the successful applicant's and his own qualifications were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." *Springer v. Convergys Customer Mgmt. Group*, 509 F.3d 1344, 1349 (11th Cir. 2007) (quotation omitted). "Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext . . . ." *Id.* (quotation omitted). Where an employer's decision to promote one employee over another is based on a subjective view of whose qualifications were superior for the position, "[a] subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." *Id*. (quotation omitted).

## A. The Acting BUE Appointment

The district court correctly granted summary judgment in favor of IBM regarding the acting BUE appointment because Webb failed to show that he

10

suffered an adverse action. The evidence indicates that the acting BUE appointment was temporary in nature, lasting less than two months, and that Peterson received no additional compensation or benefits as a result of the assignment. Moreover, Webb failed to show that the Peterson's appointment as the acting BUE had any tangible adverse effect on his employment, other than to offer his own subjective view that he suffered a loss of prestige and that his marketability was diminished. Accordingly, the asserted adverse employment action does not meet the threshold level of substantiality required by Title VII because Webb suffered no "materially adverse" change in the terms or conditions of his employment. *Davis*, 245 F.3d at 1239.

Webb also failed to present any evidence to show that IBM's proffered, legitimate non-discriminatory reasons for selecting Peterson–that she was more qualified for the position–were pretextual. Instead of offering evidence to rebut testimony that Peterson was a more proactive and effective leader, Webb merely quarreled with the wisdom of IBM's decision, asserting that, in his own estimation, he was better qualified than Peterson. Because Webb may not establish pretext simply by questioning the wisdom of his employer's decisions, and Webb has not met IBM's nondiscriminatory reasons head on and rebutted them, Webb failed to establish pretext regarding the acting BUE position. *Brooks*,

446 F.3d at 1163.

## B. The Permanent BUE Position

Webb failed to establish a *prima facie* case regarding the permanent BUE position because Webb did not apply for the position. Because the evidence showed that IBM used a formal procedure for posting the BUE position, it was only required to consider those who actually applied, as opposed to anyone who might reasonably be interested. Here, the evidence showed that Webb chose not to apply because he felt that IBM should have offered him the job. Accordingly, the district court did not err in finding that Webb failed to establish a *prima facie* case of discrimination.

Webb also failed to present evidence to establish pretext. Although Webb was already performing at least some of the duties of the BUE and he had expressed a general interest in advancing his career, the evidence showed that the BUE position was a high-level executive position that was extremely competitive, and thus IBM expected any candidate seeking the position to be proactive in applying for it. Accordingly, Webb cannot establish that IBM's proffered nondiscriminatory reasons for not selecting him for the permanent BUE position–that he did not apply or express specific interest in the position–were pretextual.

12

## C. The Resource Action

The district court correctly granted summary judgment in favor of IBM as to Webb's claim that he was selected for the resource action because of his race. Even assuming that Webb could establish a *prima facie* case, his argument that a comparison of his qualifications against Peterson's demonstrates pretext necessarily fails. Webb and Peterson's manager followed a formal process in evaluating them for the resource action, considering their production reports and their relative abilities based on three critical skills identified by IBM. The evidence showed that Peterson's production reports were higher and showed that she was trending up, while Webb's production reports were somewhat lower and were trending downward. Moreover, Peterson rated high on the three critical skills, whereas Webb rated only medium as to the critical skills. Further, there was testimony that Peterson was one of the best leaders on the team, whereas Webb was merely a satisfactory manager. Finally, aside from arguing that IBM's decision was wrong because Webb believes that he was more qualified than Peterson, Webb offered no evidence to show that his selection for the resource action was based on race.

## Conclusion

Because Webb fails to show that any of IBM's actions were a pretext for

unlawful discrimination, we affirm.

**AFFIRMED**.[2]

---